**Richard Warren NORTH, Northwestern Farms, Inc., and Northwestern Feed and Grain, Inc., Appellants (Defendants Below),**

v.

**Russell K. NEWLIN, Appellee (Plaintiff Below).**

**No. 2–182A39.**

Court of Appeals of Indiana, Fourth District.

May 26, 1982.

Rehearing Denied July 14, 1982.

Louis Pearlman, Jr., Edward Chosnek, Pearlman & Chosnek, Lafayette, for appellants.

William S. Spangler, Sr. (Robin D. Pierce, Merrillville, of counsel), Spangler, Jennings, Spangler & Dougherty, P. C., Merrillville, Stephen C. Bower, Bower & Bower, Kentland, for appellee.

MILLER, Presiding Judge.

In the instant appeal, defendant-appellants Richard Warren North and his various companies (Northwestern Farms, Inc. and Northwestern Feed and Grain, Inc.) are seeking relief from a January 5, 1982 interlocutory order issued during a proceedings supplemental action[1] in which the White Circuit Court determined North was liable for the payment of $388,120 to plaintiff-appellee Russell K. Newlin—such amount being a "severable" money judgment—and that Newlin was entitled to any available procedural remedies for collection thereof. In the proceedings supplemental action, Newlin sought to enforce *part* of the language of an earlier judgment by the Benton Circuit Court for specific performance of a land purchase contract between North, as seller, and Newlin, as buyer, to the extent that judgment required North to pay Newlin lost rental income for the land in question in the amount of $388,120. Significantly, it was not alleged by Newlin he had performed his part of the contract as the buyer by paying the down payment for the land and past-due installments, plus interest, as ordered by the Benton Circuit Court. Because we conclude the award of lost rental income to Newlin was incident to specific performance of the land purchase contract *and not severable*, we find merit in North's contention the White Circuit Court's order should be set aside because no debt of $388,-120 was then due and owing.

---

1. Ind. Rules of Procedure, Appellate Rule 4(B)(1) provides for appeals from interlocutory orders for the payment of money.

A rather involved history of litigation precedes the instant appeal. The underlying dispute concerned Newlin's tender (and North's verbal acceptance) of a counteroffer to purchase farmland for $4.5 million. After accepting Newlin's counteroffer, North entered into a second contract to sell the same land to a third party, the Webb Company. Newlin filed suit in the Benton Circuit Court, alleging breach of contract and requesting specific performance in a single legal paragraph. Newlin's amended complaint[2] also alleged he had been damaged and was entitled to recover for rental value of the real estate from December 1, 1976 (the date he was to be given possession pursuant to the contract), interest on the rental income, and attorney fees. The trial court initially entered the following judgment:

> IT IS CONSIDERED, ORDERED, ADJUDGED AND DECREED that Defendants, and each of them shall enter into a Contract for the Conditional Sale of Real Estate with the Plaintiff, according to the terms of said Counter-Offer, upon Plaintiff's paying to the Defendants twenty percent (20%) of the total purchase price, in cash, or cashier's check at the time of the execution of said Contract for the Conditional Sale of Real Estate. And, FURTHER, Defendants shall deliver up to the Plaintiff full and complete possession of the real estate described above in Finding Number 9, upon payment to them from the Plaintiff, said twenty percent (20%) of the purchase price of Four Million Five Hundred Thousand Dollars ($4,500,000.00), subject, however, to the exception that Defendant, Richard Warren North, may maintain his personal residence, situated on Tract No. One (1) described in Finding Number 9, pursuant to Counter-Offer.
>
> AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff shall have and recover from the Defendants, and each of them, damages in the sum of Three Hundred Eighty-Eight Thousand One Hundred Twenty Dollars ($388,120.00).
>
> AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each of the parties carry out the terms of this Order and the terms of said accepted Counter-Offer forthwith. (P.R. 199–200)."

Thereafter, North filed a Motion to Correct Errors which alleged, in part, it was improper to award lost rental income to Newlin unless North received, pursuant to the contract, the proper down payment plus past-due payments semi-annually at eight per cent interest. The Court granted the Motion in part and amended its judgment to read as follows:

> "IT IS CONSIDERED, ORDERED, ADJUDGED AND DECREED that Defendants, and each of them, shall enter into a Contract for the Conditional Sale of Real Estate with the Plaintiff according to the terms of said counter-offer upon Plaintiff's paying to the Defendants twenty per cent (20%) of the total purchase price in cash, or cashier's check, and in addition all semi-annual payments plus interest that would have been paid by the Plaintiff had the said Contract been performed by both parties, to date, according to the schedule set forth in said Contract for the Conditional Sale of Real Estate. And further, Defendant shall deliver up to the Plaintiff full and complete possession of the real estate described above in Finding No. Nine (9), upon payment to them from the Plaintiff said twenty per cent (20%) of the purchase price of Four Million Five Hundred Thousand Dollars ($4,500,000.00) plus installments and interest as set forth above, subject however, to the exception that Defendant, Richard Warren North, may maintain his personal residence situated on Tract One (1) described in Finding No. Nine (9) pursuant to the provisions of said accepted counter-offer.

---

**2.** Earlier complaints, which were withdrawn by Newlin, had also requested various compensatory and punitive damages.

*AND IT IS FURTHER ORDERED, AD-JUDGED AND DECREED that Plaintiff shall have and recover from the Defendants, and each of them, damages in the sum of Three Hundred Eighty-Eight Thousand One Hundred Twenty Dollars ($388,120.00).*

AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each of the parties carry out the terms of this Order and the terms of said accepted Counter-Offer forthwith." (Emphasis added.)

The court's findings of fact, which were not amended, disclosed "the fair rental value of the real estate ... for the year 1977, is Two Hundred One Thousand Four Hundred Twenty Dollars" and that "the fair rental value of the real estate ... for the crop year 1978 is One Hundred Eighty-Six Thousand and Seven Hundred Dollars," thus totaling $388,120.00.

The trial court's amended judgment for specific performance was affirmed by this Court in *North v. Newlin*, (1981) Ind.App., 416 N.E.2d 144, where we concluded North's verbal acceptance of Newlin's counteroffer was valid, and that North had failed to meet his burden of showing specific performance was inequitable, as he alleged, simply because he and the Webb Company had undertaken a second contract (the full terms of which were never revealed) for purchase of the land.

The parties have disclosed that, recently, the Webb Company initiated further litigation to establish its rights to the land,[3] and specific performance between North and Newlin has not occurred. Nevertheless, as the impetus to the instant appeal, Newlin has sought through proceedings supplemental in the White Circuit Court to obtain "damages" of $388,120 based on the earlier judgment of specific performance.

As noted above, North filed a response asserting such sum was not due and owing by virtue of Newlin's failure to tender, as a condition precedent, the payments ordered by the Benton Circuit Court. Thereupon, the White Circuit Court made an entry, in the manner of a declaratory judgment, forming the basis of the instant appeal. The Court found

"[t]hat under Indiana Trial Rule 54 the Judgment of specific performance and damages are severable unless otherwise specifically provided therein; that the Judgment entered in this case did not contain any such specification, nor did the trial court place any restrictions or conditions on the recovery or collection thereof,"

overruled North's objection that the debt was not due and owing, and concluded Newlin was entitled to any available procedural remedies in the proceedings supplemental action for collection thereof.

On appeal North contends the White Circuit Court's order should be set aside because Newlin has not made his appropriate payments (the down payment and installments with interest). In response, Newlin asserts the original order to pay $388,120 is a severable "damage" award, and that, moreover, North has waived any error with respect to such "damage" award by failing to raise it in his original appeal.

## DECISION

Newlin's action in the White Circuit Court was predicated upon Ind. Rules of Procedure, Trial Rule 69(E), which provides, in part:

"Notwithstanding any other statute to the contrary, proceedings supplemental to execution may be enforced by verified motion or with affidavits in the court where the judgment is rendered alleging generally:

(1) that the plaintiff owns the described judgment against the defendant...."

With respect to such Rule, our Courts have noted that "[o]bviously the rule anticipates

---

**3.** As noted in our earlier opinion, the Webb Company moved to intervene *after* the trial court rendered its final judgment, but did not appeal from that court's denial of its motion.

that prior to the granting of a final order in the proceedings supplemental a valid judgment must be entered against the defendant" entitling the plaintiff to the relief requested. *DeLater v. Hudak*, (1980) Ind. App., 399 N.E.2d 832. *Accord, Sare v. Butcher*, (1895) 141 Ind. 146, 40 N.E. 749.

While the plaintiff must thus demonstrate the existence of an appropriate judgment, it has also been held, however, that through proceedings supplemental the parties may not collaterally attack the underlying judgment, *DeLater v. Hudak, supra*, since proceedings supplemental constitute "an independent action, in no way affecting the merits of the action in which the original judgment was rendered." *Hobbs v. Town of Eaton*, (1906) 38 Ind.App. 628, 633, 78 N.E. 333, 335.

In the instant case, as noted above, the White Circuit Court has in essence rendered a declaratory judgment concluding the "damage" judgment of the Benton Circuit Court did not contain any restrictions or conditions on the recovery or collection thereof, and that it was "severable" from the order of specific performance. North contends such judgment misconstrued the original specific performance order. We agree.

In *Wilson v. Wilson*, (1976) 169 Ind.App. 530, 349 N.E.2d 277, this Court considered various principles of construing judicial decrees in a procedural context somewhat analogous to that in the case at bar. There, a wife had sought recompense from her estranged husband for attorney fees associated with a dissolution proceeding, and received a preliminary award of $1,000. Later, the court awarded additional fees in the dissolution decree, which stated the husband "shall pay to attorneys for Plaintiff... the sum of $6,500.00... within sixty (60) days from the date of this Decree."

The court's findings stated the sum of $6,500.00 represented "*total* attorneys' fees for services rendered in this matter...." (Emphasis added.) The husband, who evidently did not appeal the decree, paid $5,500 in addition to the earlier preliminary $1,000 fee, and some four years later filed his Petition for Interpretation of Decree for Divorce. The wife contended the decree required payment of $6,500 *in addition to* the preliminary award of $1,000. Thereupon, the trial court clarified its somewhat ambiguous dissolution decree, and concluded the husband had satisfied his obligation in full by making total payments of $6,500. Upon the wife's appeal, this Court initially observed the trial court had inherent authority to entertain actions to determine whether a judgment has been carried out and satisfied. *Wilson v. Wilson, supra, citing McQuat et al. v. Cathcart*, (1882) 84 Ind. 567.[4] In responding to the wife's argument that the rights of the parties were to be defined solely by the decretal portion of the judgment, which stated the husband was to pay $6,500 "within sixty (60) days from the date of this Decree" (thus seeming to exclude the earlier $1,000 payment), this Court stated:

> "We do not accept Elizabeth's argument that in the event there is some question as to the exact meaning of a judgment that a court can go no further than the decretal portion of the decree in construing the language of the judgment."

*Wilson v. Wilson, supra*, 349 N.E.2d at 281. In *Wilson*, it was held that although, as a general rule, the rights of parties are to be found in the decretal portion of a decree, to ascertain the precise meaning of a judgment a court may look to other matters such as the issuing court's findings. In that case, as noted above, the findings revealed $6,500 represented the husband's "total" obligation for attorneys' fees. On this basis,

---

4. This Court also noted the husband's petition could have been considered as a motion for relief pursuant to Ind.Rules of Procedure, Trial Rule 60(B)(7) (permitting relief from a judgment which has been "satisfied, released, or discharged") or pursuant to Ind.Rules of Procedure, Trial Rule 13(M) (stating "[s]atisfaction of a judgment or credits thereon may be ordered, for sufficient cause upon notice and motion....").

the trial court's declaratory judgment was upheld.

In the instant case, in looking at the findings and the decretal portion of the Benton Circuit Court's judgment in the context of the record before us, we determine the White Circuit Court has erroneously concluded North was ordered to pay $388,120 to Newlin as "severable" money "damages," although it is true the Benton Circuit Court referred to such sum as damages in its judgment. The court's findings, as noted above, revealed such amount represented rental income from the property for the first two years within the installment contract term. As such, the amount awarded was clearly considered *an incident of* specific performance which was designed to adjust the equities between the parties to the date of the judgment in the event the contract were performed as ordered. Indeed, Newlin's one-paragraph amended complaint merely requested such "damages" as an aspect of specific performance.[5]

A variety of courts in other jurisdictions have recognized the confusion which results when courts and parties commenting on orders for specific performance have referred to the award of lost rental income (which is offset against payment of the purchase price and interest thereon) as "damages." *See* Annot., "Specific Performance: Compensation or Damages Awarded Purchaser for Delay in Conveyance of Land." 7 A.L.R.2d 1201 (1949); 71 Am. Jur.2d § 217 at 278 (1973), where it is stated "[t]he compensation awarded as incident to a decree for specific performance is not for breach of contract and is therefore not legal damages." In *Greenstone v. Claretian*

*Theological Seminary,* (1959) 173 Cal.App.2d 21, 343 P.2d 161, for example, a seller of land contended the trial court erred in awarding lost rental income as "damages" (to be offset against his recovery for loss of use of the purchase price), to which the California Court of Appeals responded:

"Manifest in its repeated references to damages is appellant's basic misconception of what this credit actually consists. It is true, as plaintiff argues, that where a vendee is entitled to a decree of specific performance of a contract for the purchase or exchange of land, he is entitled to a judgment for the rents and profits thereon from the time conveyance should have been made; and that under this rule no 'damages' as such are awarded, the amount in reality being a form of compensation due the buyer for loss incurred because of the delay in receiving title, which amount may be ordered incident to the judgment of specific performance. This is awarded upon the theory that a court of equity, once it obtains jurisdiction of an action for specific performance, should adjust the rights of the parties and equalize any losses occasioned by the delay by offsetting them with money payments. *Confusion in this area has existed because of the informal use of the term 'damages' in connection with such an award, but it is settled that such compensation neither constitutes damages as contemplated in an action for breach of contract, nor implies legal damages."* (Citations omitted) (Emphasis added.).

*Id.* at 29, 343 P.2d at 165. The Court in that case concluded that "in consideration of the explicit terms of the agreement of

---

**5.** Although the White Circuit Court cites Ind. Rules of Procedure, Trial Rule 54(E) in its "findings" for the proposition that "specific performance and damages are severable unless otherwise specifically provided" in a judgment, we note that Rule merely provides:

"(E) Judgments severable. Unless otherwise specified therein, judgments against two [2] or more persons or upon *two [2] or more claims* shall be deemed joint and several for purposes of:

(1) permitting enforcement proceedings jointly or separately against different parties or jointly and separately against their property; or

(2) permitting one or more parties to challenge the judgment (by appeal, motion and the like) as against one or more parties as to one or more claims or parts of claims. Nothing herein is intended to dispense with notice requirements or provisions requiring or permitting parties to join or participate in the same appeal." (Emphasis added.)

August 30, 1955, the manner in which they were ordered in the final judgment, and the obvious intent of the trial court, *we cannot denominate the credit allowed plaintiff... as an outright award thereof, separate and apart from the express provisions and enforcement of the agreement." Id.* at 30–31, 343 P.2d at 166 (emphasis added.) *See also Ellis v. Mihelis,* (1963) 60 Cal.2d 206, 32 Cal.Rptr. 415, 384 P.2d 7, overruling *Greenstone* to the degree that opinion held an interest offset may be allowed even as to money which the purchaser set aside in escrow, but affirming the general rule that "a purchaser who seeks to recover rents and profits must permit an offset for his use of the purchase funds during the period that performance was delayed." *Id.* at 220, 32 Cal.Rptr. at 423, 384 P.2d at 15.

■■■ We arrive at a similar conclusion in the instant case [6] based on our reading of the Benton Circuit Court's findings and judgment and Newlin's one-paragraph complaint requesting specific performance. Under these circumstances, there is no mer-

---

6. Our conclusion comports with the well-settled rule that "when the language of a judgment is susceptible of two constructions, from one of which it follows that the law has been correctly applied to the facts, and from the other that the law has been incorrectly applied, that construction should be adopted which correctly applies the law." *In re Summers,* (1922) 79 Ind.App. 108, 111, 137 N.E. 291, 293.

7. Because of our resolution of the instant appeal, we find it unnecessary to consider Newlin's argument North should be assessed damages pursuant to Ind.Rules of Procedure, Appellate Rule 15(G) for instituting a frivolous appeal in bad faith.

We also find it unnecessary to consider North's alternative contention that based on "the law of the case," Newlin may not assert

it in Newlin's argument that North has "waived" any error in the trial court's judgment by failing to raise it in the earlier appeal, since it is apparent that under a proper reading of the judgment, no error was committed, and thus there would have been no basis for an appeal by North. In the instant appeal, North has not collaterally attacked such judgment, but instead has essentially raised it as a defense to Newlin's effort to collect an allegedly "severable" money judgment. North concedes in this proceeding that "[i]f and when plaintiff/appellee Newlin places the funds due under the contract, with interest, in such a position that he is deprived of the use thereof, he would be entitled to the fair rental value of the real estate from the date provided in the contract to the date of the deposit of the aforementioned moneys and/or acquisition of title."

For the reasons stated above, we reverse the judgment of the White Circuit Court.[7]

CONOVER and YOUNG, JJ., concur.

---

any alleged claim for damages under the Benton Circuit Court's judgment. Such contention is based on this Court's erroneous suggestion, in footnote 5 of our earlier opinion, *North v. Newlin, supra* at 147, that the trial court had withdrawn that part of its judgment requiring North to pay lost rental income. Our error was based on the trial court's reference to lines and page numbers (which were altered when the trial court clerk prepared the transcript for appeal) in amending its judgment for specific performance. We note, however, that contrary to North's assertion in his appellate brief, the award of lost rental income as "damages" was neither "specifically considered in the first appeal," nor was it a matter "that might have been litigated under *the issues formed* under the first appeal." (Emphasis added.)