**Kenneth J. KESLER, Appellant–Defendant,**

v.

**J. John MARSHALL, Appellee–Plaintiff.**

No. 20A03–0204–CV–107.

Court of Appeals of Indiana.

Aug. 5, 2003.

Rehearing Denied Sept. 15, 2003.

Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, IN, Attorney for Appellant.

John William Davis, Jr., Davis & Roose, Goshen, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

Kenneth J. Kesler and J. John Marshall entered into a real estate purchase agreement, in which Kesler agreed to purchase real property from Marshall, but the sale was not consummated. The trial court ruled in Marshall's favor in his suit for specific performance of the contract and incidental damages. Kesler appeals the judgment, raising numerous issues for review. We find the following issue dispositive: whether the trial court's finding that Kesler breached the contract was clearly erroneous.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On November 24, 1990, Kesler and Marshall entered into a purchase agreement under which Kesler agreed to purchase real property from Marshall. The parties executed a standard form purchase agreement to which they added a number of conditions. Kesler was to pay one hundred dollars earnest money, pay a down payment, and execute a promissory note and mortgage in favor of Marshall for the balance of the purchase price. The agreement was also subject to Marshall's performance of certain conditions precedent, including "to provide, in writing, that the property can be used for any manor [sic] under M–1 zoning regulations, prior to closing." *Trial Exhibits, Exhibit 1.*

Marshall provided Kesler with his personal assurances that the property could be used for M–1 uses and a letter from Dennis Harney, the Director of the Planning and Development Department of the city of Elkhart, which purported to fulfill this requirement. Kesler refused to proceed to closing on the transaction. Nearly six years later, Marshall brought suit demanding that Kesler specifically perform the contract and seeking monetary damages for lost profits and reimbursement for expenses he incurred in connection with the property in the intervening years. After a bench trial, the court ordered Kesler to perform the contract and awarded Marshall $91,896.63 in incidental damages.

## DISCUSSION AND DECISION

The trial court entered findings and conclusions pursuant to Ind. Trial Rule 52(A), which provides that "[o]n appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." In applying this rule, we employ a two-tiered standard of review. *Wagner v. Estate of Fox,* 717 N.E.2d 195, 200 (Ind.Ct. App.1999). First, we consider whether the evidence supports the findings, construing the findings liberally in support of the judgment. *Id.* Next, we determine whether the findings support the judgment. *Id.* A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions thereon. *Id.* In applying this standard, we will neither reweigh the evidence nor judge the credibility of the wit-

nesses. *Id.* Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* We must affirm the judgment of the trial court unless the evidence points incontrovertibly to an opposite conclusion. *Id.*

Here, the parties' agreement required Marshall to give assurances that the property could be used in any manner under M–1 zoning. However, the undisputed evidence was that the property enjoyed M–1 zoning only by virtue of its "grandfathered" status as a nonconforming use. Rebecca Butler, who was assistant city attorney at the time of the agreement, testified that a grandfathered M–1 property could be used for any M–1 purpose if it complied with the zoning ordinances. However, she explained that the difference between M–1 and M–1 nonconforming is that the M–1 nonconforming would lose its M–1 status after eighteen months of nonuse, while an M–1 zoning status could be used for any use for any amount of time, yet maintain its M–1 character. The evidence also showed that Kesler felt that Harney's letter was ambiguous and asked Marshall to seek a second letter for clarification, but Marshall refused. There was no evidence at trial that the property could be used in any manner as an M–1 use. Accordingly, Marshall failed to fulfill the conditions of the agreement. A party seeking specific performance of a real estate contract must prove that he has substantially performed his contract obligations or offered to do so. *Ruder v. Ohio Valley Wholesale, Inc.*, 736 N.E.2d 776, 779 (Ind.Ct.App.2000). Thus, we find the trial court's conclusion that Marshall was entitled to specific performance to be clearly erroneous.

We also conclude that it was error to award specific performance and damages. Marshall's complaint alleged a single claim for specific performance and incidental damages. The grant of specific performance directs the performance of a contract according to, or substantially in accordance with, the precise terms agreed upon. *Salin Bank & Trust Co. v. Violet U. Peden Trust,* 715 N.E.2d 1003, 1007 (Ind.Ct.App.1999), *trans. denied,* 735 N.E.2d 223 (2000). The decision whether to grant specific performance is a matter within the trial court's sound discretion. *Ruder,* 736 N.E.2d at 779; *Wagner,* 717 N.E.2d at 200; *Salin Bank,* 715 N.E.2d at 1007; *Neel v. Cass County Fair Ass'n,* 143 Ind.App. 339, 344–45, 240 N.E.2d 546, 551 (1968). Such judicial discretion is not arbitrary, but is governed by and must conform to the well-settled rules of equity. *Wagner,* 717 N.E.2d at 200. We will find an abuse of discretion where the trial court's decision is clearly against the reasonable deductions which may be drawn from the facts before the court. *Id.*

Indiana courts order specific performance of contracts for the purchase of real estate as a matter of course. *Candlelight Props., LLC v. MHC Operating Ltd. P'ship,* 750 N.E.2d 1, 10 (Ind.Ct.App.2001), *trans. dismissed; Ruder,* 736 N.E.2d at 779; *Wagner,* 717 N.E.2d at 200. They do so because each piece of real estate is considered unique, without an identical counterpart anywhere else in the world. *Candlelight Props.,* 750 N.E.2d at 10; *Wagner,* 717 N.E.2d at 200. However, specific performance is an equitable remedy, and the power of a court to compel specific performance is an extraordinary power. *Ruder,* 736 N.E.2d at 779; *Wagner,* 717 N.E.2d at 201; *Neel,* 143 Ind.App. at 344, 240 N.E.2d at 550. Thus, the equitable remedy of specific performance is not available as a matter of right. *Neel,* 143 Ind.App. at 345, 240 N.E.2d at 551.

Our courts generally will not exercise equitable powers when an adequate remedy at law exists. *Porter v. Bankers Trust Co. of California, N.A.,* 773 N.E.2d 901, 908 (Ind.Ct.App.2002); *Tri-Prof'l Realty, Inc. v. Hillenburg,* 669 N.E.2d 1064, 1070 (Ind.Ct.App.1996), *trans. denied,* 683 N.E.2d 583 (1997). Where substantial justice can be accomplished by following the law, and the parties' actions are clearly governed by rules of law, equity follows the law. *Porter,* 773 N.E.2d at 908.

In this case, the trial court concluded that Marshall was entitled to specific performance. However, none of the court's findings support the conclusion that monetary damages would be insufficient to fully compensate Marshall. Rather, Marshall could have kept Kesler's earnest money and terminated the contract, or resold the property and held Kesler liable for the difference between the actual sale price and the price under the contract. In either case, Marshall would have been fully compensated by damages for Kesler's failure to perform. Further, the traditional rationale underlying the grant of specific performance in real estate transactions, i.e., that each piece of property is unique, does not apply here to the party seeking specific performance, Marshall, because he is not obtaining the property in the transaction, but rather only money. Under these circumstances, the trial court abused its discretion in ordering Kesler to specifically perform the contract. *See Ludington v. LaFreniere,* 704 A.2d 875 (Me.1998) (sellers of real estate may be entitled to specific performance in some, but not all, circumstances); *Williamson v. Magnusson,* 336 N.W.2d 353 (N.D.1983) (vendors of real estate must establish why legal remedy of damages is inadequate to obtain equitable remedy of specific performance); *Lakshman v. Vecchione,* 102 Ill.App.3d 629, 58 Ill.Dec. 257, 430 N.E.2d 199 (1981) (specific performance will not be granted to vendor of real estate where there is an adequate remedy at law); *Cores v. Comly Enters., Inc.,* 1979 WL 139270 (Pa. Commw.Pl.1979) (seller of real estate may be entitled to specific performance if legal remedies are insufficient). *But see Turley v. Ball Assocs., Ltd.,* 641 P.2d 286 (Colo.Ct. App.1981), *cert. denied* (1982) (proof of inadequacy of legal remedy is unnecessary in action for specific performance of contract to convey real estate).

The trial court also awarded incidental damages along with its award of specific performance. However, as we have previously explained, "(t)he compensation awarded as incident to a decree for specific performance is not for breach of contract and is therefore not legal damages." *North v. Newlin,* 435 N.E.2d 314, 319 (Ind.Ct.App.1982). Rather, such sums are awarded to " 'adjust the rights of the parties and equalize any losses occasioned by the delay by offsetting them with money payments.' " *Id.* (quoting *Greenstone v. Claretian Theological Seminary,* 173 Cal. App.2d 21, 343 P.2d 161, 165 (1959)). Because such sums are premised upon the entitlement to specific performance, they cannot be awarded where a party is not also entitled to specific performance. *See also Hiatt v. Yergin,* 152 Ind.App. 497, 525–26, 284 N.E.2d 834 (1972), *overruled in part on other grounds,* (distinguishing cause of action for breach of contract and damages from one for specific performance and an accounting).

Here, we have held that the trial court abused its discretion in awarding specific performance under these circumstances. Accordingly, we hold that the trial court's monetary award in Marshall's favor must also be reversed.

Reversed.[1]

SHARPNACK, J., concurs.

SULLIVAN, J., concurs with separate opinion in which SHARPNACK, J., also concurs.

SULLIVAN, Judge, concurring.

In *Migatz v. Stieglitz*, 166 Ind. 361, 364, 77 N.E. 400, 401 (Ind.1906) the court held:

> "The equitable doctrine is that the enforcement of contracts must be mutual, and, the vendee being entitled to specific performance, his vendor must likewise be permitted in equity to compel the acceptance of his deed and the payment of the stipulated consideration. This remedy is available, although the vendor may have an action at law for the purchase money."

Under the circumstances of this case I fully concur that Marshall was not entitled to the equitable remedy of specific performance. I further agree, notwithstanding the statement in *Migatz*, that Marshall is not entitled to recover the monetary award for incidental damages as distinguished from an arguable right of recovery of the agreed purchase price in an "action at law."

---

1. We also note that Marshall waited nearly six years to file his suit against Kesler. Generally, a party who seeks specific performance of a contract is obliged to take all reasonable steps to assert his or her contractual right. *Wagner*, 717 N.E.2d at 201. As one court has explained: "[E]quity aids the vigilant, not those who sleep on their rights." *Id.*